FILED

2026 Feb-10  AM 10:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

LOCAL COUNSEL

Daniel Lopez Rubio, Esq.

Solid Legal, P.C.
242 W. Valley Ave., STE 101
Birmingham, Alabama 35209
(205) 576-0000
daniel@solidlegal.org

PRO HAC VICE COUNSEL

Logan Duplessis, Esq.

Rozas & Associates
7967 Office Park Blvd.
Baton Rogue, Louisiana 70809
(225) 341-6945
logan.duplessis@rozaslaw.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ALABAMA

|  |  |
|---|---|
| Benancio Mejia Ayala<br><br>         Petitioner,<br><br>  v.<br><br>MELISSA HARPER, *in his official capacity as Field Office Director, New Orleans ICE Field Office*; Todd LYONS, *in his official capacity as Acting Director, ICE*; Kristi NOEM, *in her official capacity as Secretary, U.S. Department of Homeland Security*; Pamela BONDI, *in her official capacity as U.S. Attorney General; Executive Office For Immigration Review*; Barry SMITH, *in his official capacity as Chief of Detention of Etowah County Detention Center,*<br><br>        Respondents. | Case No.<br> A#  221 469 719<br>        <br><br>**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

1

## PRELIMINARY STATEMENT

1.      Petitioner Benancio Mejia Ayala ("Petitioner" or "Mr. Mejia Ayala") hereby petitions this Court for a Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief ("Petition") pursuant to 28 U.S.C. § 2241; the All Writs Act, 28 U.S.C. § 165; the Immigration and Nationality Act ("INA") and regulations thereunder; the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, and Article I, Section 9, Clause 2 of the United States Constitution ("Suspension Clause") and the Fifth Amendment of the United States Constitution.

2.      Mr. Mejia Ayala entered the United States in September of 1999 without inspection. He has had no previous interactions with immigration officials. He has had no criminal history apart from a minor traffic violation. Mr. Mejia Ayala has ten lawful permanent resident family members and ten US Citizen Children ranging from 25 to 3 years old.  Recently, he was detained by US Immigration and Customs Enforcement (ICE) when local police officers in Etowah, Alabama who pulled in behind his parked vehicle in his driveway. Officers informed Mr. Mejia Ayala that his car had been reported wanted or stolen; this information was false. They then detained him for driving without a license. Mr. Mejia Etawah was then transferred to ICE custody. After this arrest he was sent to the Etowah County Detention Center. There is currently no future hearing in Mr. Mejia Ayala's case. The Immigration Judge will hold that Petitioner is ineligible for bond pursuant to

*Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).

3.    On September 5, 2025, the Board of Immigration Appeals ("BIA" or "Board") issued a decision that held that all noncitizens who entered the United States are subject to detention under 8 U.S.C. § 1225(b).

4.    On November 20, 2025, the district court granted partial summary judgment on behalf of individual plaintiffs and on November 25, 2025, certified a nationwide class and extended declaratory judgment to the certified class. *Maldonado Bautista, v Santacruz,* No. 5:25-CV-01873-SSS-BFM, --- F. Supp. 3d ---, 2025 WL 3289861, at *11 (C.D. Cal. Nov. 20, 2025) (order certifying Plaintiffs-Petitioners' proposed nationwide Bond Eligible Class, incorporating and extending declaratory judgment from Order Granting Petitioner's Motion for Partial Summary Judgment).

5.    The Declaratory judgment held that the Bond Denial Class members are detained under 8 U.S.C. § 1226 (a) and thus may not be denied consideration for release on bond under § 1225(b)(2)(A). *Maldonado Bautista,* 2025 WL 3289861, at *11.

6.    Nonetheless, the Executive Office for Immigration Review and its subagency the Immigration Court and the Department of Homeland Security (DHS) have blatantly refused to abide by the declaratory relief and have unlawfully ordered the Petitioner be denied the opportunity to be released on bond.

7.    Petitioner Benancio Mejia Ayala Is a member of the Bond Eligible

3

Class, as he:

    a) Does not currently have lawful status in the United States and is currently detained at the Etowah County Detention Center and was apprehended by immigration authorities in the interior of the United States.

    b) He entered the United States approximately 26 years and was not apprehended upon arrival, *cf. id*; and

    c) is not detained under 8 U.S.C. § 1226, (c), § 1225(b)(1) or § 1231.

## CUSTODY

8.    Petitioner is in the physical custody of the Respondents. Petitioner is detained at the Etowah County Detention Center, 827 Forrest Avenue, Gadsden Alabama

## JURISDICTION AND VENUE

9.    This action arises under the Constitution of the United States; the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq., 8 U.S.C. § 1231; and the Administrative Procedure Act, 5 U.S.C. § 701 et seq.

10.    This Court has subject matter jurisdiction over this Petition pursuant to 28 U.S.C. § 2241, 28 U.S.C. §1331, and Article I § 9, cl. 2 of the United States Constitution; the All Writs Act 28 U.S.C. § 1651; the Administrative Procedure act 5 U.S.C. § 701; and for injunctive relief pursuant to the Declaratory Judgment Act 28 U.S.C. § 2201.

11. Federal district courts have jurisdiction to hear habeas claims by noncitizens challenging DHS's conduct. *See, e.g., Zadvydas v Davis,* 533 U.S. 678, 687 (2001). Federal district courts also have jurisdiction to hear "collateral legal and constitutional challenges to the process by which the government seeks to remove [a noncitizen]." *Fatty v Nielsen,* No. C17-1535-MJP, 2018 WL 3491278, at *2 (W.D. Wash. Jul 20, 2018); *see also You v Nielsen,* 321 F. Supp. 3d 451 (S.D.N.Y. Aug. 2, 2018; *Villavicencio Calderon v Sessions,* 330 F. Supp. 3d 944, 957-59 (S.D.N.Y Aug. 1, 2018).

12. Federal courts have jurisdiction to hear habeas petitions, because "absent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v Rumsfeld,* 542 U.S. 507, 525 (2004) (plurality opinion of O'Connor, J.); U.S. Const. art. I § 9, cl. 2 ("the Privilege of the Writ of Habeas Corpus shall not be suspended…"); 28 U.S.C. § 2241 (c)(3) (stating federal courts may grant the writ to any person "in custody in violation of the Constitution or laws or treaties of the United States").

13. The Suspension Clause saves this Court's jurisdiction and ability to hear Petitioner's claims. Although the Respondents will likely argue that 8 U.S.C. § 1252 strips the Court of jurisdiction, but, as applied, the statute unconstitutionally suspends the habeas writ by failing to provide an adequate alternative forum for review. *Boumediene v Bush,* 553 U.S. 723, 736, 771 (2008) (determining first whether the statute "denies the federal courts jurisdiction," and then whether the

5

statute "avoids the Suspension Clause mandate" by providing "adequate substitute procedures for habeas corpus")' *see also Hamdan v Rumsfeld,* 548 U.S. 557, 575 (2006) (tracing the requirement of an "unmistakably clear statement" at least as far back as *Ex parte Yerger*, 75 U.S. 85, 104-05 (1868)). Thus, this court retains residual habeas jurisdiction as the lack of an adequate alternative forum to meaningfully seek review would amount to a suspension of the writ of habeas corpus, such that the statutes would need to be read to permit Petitioner's claims to avoid a constitutional violation.

14.     At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of executive encroachment on liberty, and it is in that context that its protections have been strongest. *See I.N.S. v St. Cyr*, 433 U.S. 289, 301 (2001). These protections extend fully to noncitizens subject to an order of removal. *Id.; see also* Gerard L. Neuman, Habeas Corpus, Executive Detention, and the Removal of Aliens, 98 Colum. L. Rev. 961, 1044 (1998) ("[H]istorical precedents beginning shortly after 1787 and reaching to the present confirm the applicability of the writ of habeas corpus to the detention involved int eh physical removal of aliens from the United States. These precedents include opinions… denying the power of Congress to eliminate judicial inquiry.").

15.     The right to seek habeas corpus relief is fundamental to the Constitution's scheme of ordered liberty. Habeas corpus is "a writ employed to bring a person before a court, most frequently to ensure that the party's imprisonment or

detention is not illegal." *Boumediene,* 553 U.S. at 737 (quoting Black's Law Dictionary 728 (8th ed. 2004)). Blackstone called it "the most celebrated writ in English law," 3 Blackstone's Commentaries 129 (1791), and deemed the Habeas Corpus Act of 1679 "the bulwark of the British Constitution." 4 Blackstone's Commentaries 438 (1791).

16.     In the penultimate Federalist Paper, Alexander Hamilton praised ht establishment of the writ as a defense against "the favorite and most formidable instruments of tyranny." The Federalist No. 84, p. 251 (R.M. Hutchins ed. 1952). Indeed, the "great writ of liberty", *see Darr v Buford,* 339 U.S. 200, 225 (1950) (Frankfurter, J., dissenting), is "the only common-law writ to be explicitly mentioned" in the Constitution. *Hamdi,* 542 U.S. at 558 (Scalia, J., dissenting) (citing U.S. Const. Art I, § 9, cl.2).

17.     The U.S. Constitution followed its English counterpart in permitting legislative suspension of the writ in extreme circumstances. In England, "the parliament only, or legislative power, whenever it sees proper, [could] authorize the crown, by suspending the habeas corpus act for a short and limited time, to imprison suspected persons without giving any reason for so doing." 1 Blackstone's Commentaries 132 (1791).

18.     The United States Constitution, however, does not permit suspension of the writ "whenever [the legislature] sees proper," but rather guarantees in the Suspension Clause that "The Privilege of the Writ of Habeas Corpus shall not be

suspended," The Suspension Clause provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion, or Invasion the public Safety may require it." U.S. Const. art I, § 9, cl. 2. "[B]ecause of that Clause, some 'judicial intervention in deportation cases' is unquestionably 'required by the Constitution'" *St. Cyr*, 533 U.S. at 300 (quoting *Heikkila v barber,* 345 U.S. 229, 235(1953)). For a statute to limit the writ, it "must overcome both the strong presumption in favor of judicial review of administrative action and the longstanding rule requiring a clear statement of congressional intent to repeal habeas jurisdiction." *St. Cyr,* 553 U.S. at 298 (footnote omitted). Congress can strip jurisdiction without violating the Suspension clause only where it provides "a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention." *Swain v Pressley,* 430 U.S. 372, 381 (1977); *see also Boumediene*, 533 U.S. at 779.

19.    "[I]f an otherwise acceptable construction of a statute would raise serious constitutional problems, and [] an alternative interpretation of the statute is fairly possible, [courts] are obligated to construe the statute to avoid such problems." *St. Cyr,* 533 U.S. at 299-300 "Indeed, it is an elementary rule in construing acts of Congress that every reasonable construction must be resorted to, in order to save as statute from unconstitutionality." *Skilling v United States,* 561 U.S. 358, 406, (2010).

20.    Courts have found that the Suspension Clause protects petitioners' rights to habeas relief because of the inadequacy of the motion ot reopen process,

8

*see Sean B. v McAleenan,* 412 F. Supp. 3d 472, 490 (D.N.J. 2019) ("I am most moved here by the constitutional necessity of a stay under the Suspension Clause, see supra, and the likelihood of a violation of Petitioner's procedural and constitutional rights if it is not granted. Petitioner may or may not prevail before the BIA or the Court of Appeals; the Constitution requires, however, that his opportunity to put his case be preserved)' *Sukwanputra v Barr*, No. 19-3965, 2019 U.S. Dist. LEXIS 159558, at *7-8 (E.D. Pa. Sep 19, 2019); *Compere v Nielsen,* 2019 DNH 017, 358 F. Supp. 3d 294 (D. Masss. Feb. 1, 2018); *Ibrahim v Acosta,* No. 17-cv-24574, 2018 WL 582520, at *506 (S.D. Fla. Jan 26, 2018); *Jimenez v Nielsen* 334 F. Supp. 3d. 370, 381-82 (D. Mass. 2018). Other courts have found that it was necessary to apply the canon of constitutional avoidance to avoid ruling on the Suspension Clause issues raised. *S.N.C. v Sessions,* No. 18 CIV. 7680 (LGS), 2018 WL 6175902, at *3 (S.D.N.Y. Nov. 26, 2018); *Sied v Nielson*, No. 17-cv-06785, 2018 WL 1142202, at *31-67 (N.D. Cal. Mar. 2, 2018.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

21. No exhaustion requirement applies to the constitutional claims raised in this Petition because no administrative agency exists to entertain Pettioner's constitutional challenges. *See Howell v INS*, 72 F.3d 288, 291 (2d cir. 1995); *Arango-Aradondo v INA,* 13 F.3d 610-614 (2d Cir. 1994), *see also Matter of C-*, 20 I&N Dec. 529, 532 (BIA 1992) ("it is settled" that the immigration judge and the BIA cannot decide constitutional questions.); *Burns v Cicchi*, 702 F. Supp. 2d 281,

286 (D.N.J. 2010) (excusing further exhaustion where dispositive issues have been predetermined).

22.   Additionally, exhaustion is not required where the Petitioner challenges the constitutionality of the agency procedure itself, "such that the question fo the adequacy of the administrative remedy is for all practical purposes identical with the merits of the plaintiff's lawsuit." *McCarthy v Madigan*, 503 U.S. 140, 148 (1992) (internal brackets omitted).

23.   Finally, "courts may waive a judicially created exhaustion requirement where pursuing administrative remedies would be futile," as any would be here. *Brevil v Jones,* No. 17 CV 1529-LTS-GWG, 2018WL 5993731, at *2 (S.D.N.Y. Nov. 14, 2018) (quoting *Araujo-Cortes,* 35 F. Supp. 3d at 538-39)

### REQUIREMENTS OF 28 U.S.C. § 2243

24.   The Court should grant the petition for writ of habeas corpus "forthwith," as the legal issues have already been resolved for class members in *Maldonado Bautista.*

25.   Habeas corpus is "perhaps the most important writ known to the constitutional law… affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v Noia*, 372 U.S. 391, 400 (1963) (emphasis added). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within

the four corners of the application." *Yong v I.N.S.*, 208 F. 3d 1116, 1120 (9th Cir.

2000) (Citation omitted).

## PARTIES

26.    Petitioner Mr. Mejia Ayala is a national and citizen of Mexico who

entered the United States on or about September of 1999, was taken into custody

recently, and has remained in ICE custody ever since. After Petitioner was arrested

by United States Immigration and Custom Enforcement (ICE) officers when police

officers pulled behind his parked car in his driveway. Police officers told him that

his car had been reported stolen or wanted; this information was not true. Mr. Mejia

Ayala was then detained for driving without a license, ICE did not set a bond.

Petitioner has resided in the United States since approximately 1999.

27.    Upon information and belief, Warden is Warden of Etowah County

Detention Center, where Petitioner is currently detained under the authority of ICE,

alternatively may be considered to be Petitioner's immediate custodian.

28.    Respondent Melissa Harper is the Acting New Orleans ICE Field

Office Director and therefore is responsible for ICE policies and operations in the

New Orleans District, which stretches across Alabama, Arkansas, Louisiana,

Mississippi, and Tennessee. *See Vásqyez v. Reno*, 233 F.3d 688, 690 (1st Cir. 2000),

cert. denied, 122 S. Ct. 43 (2001).

29.    Respondent Todd Lyons is Acting Director of ICE. As the senior

official performing the duties of Director of ICE, he is responsible for the

administration and enforcement of the immigration laws and as such is a custodian of Petitioner. He is sued in his official capacity.

30.    Respondent Kristi Noem is the United States Secretary of Homeland Security, which oversees ICE. As such, he is responsible for the administration and enforcement of the immigration laws and is a custodian of Petitioner. He is sued in her official capacity.

31.    Respondent Pamela Bondi is named in her official capacity as the Attorney General of the United States. In this capacity, he is responsible for the administration of the immigration laws as exercised by the Executive Office for Immigration Review, pursuant to INA 103(g), 8 USC 1103(g), routinely transacts business in the Northern District of Alabama, is legally responsible for administering Petitioner's removal proceedings and the standards used in those proceedings.

## STATEMENT OF FACTS

32.    Petitioner is a native and citizen of Mexico.

33.    Petitioner entered the United States in September 1999 without inspection.

34.    Petitioner was detained following police officers pulling behind his vehicle and informing him that the vehicle was reported as stolen or wanted. This information was false. Petitioner was detained for driving without a license.

35.    Petitioner is currently in the jurisdiction of the Northern District of

12

Alabama.

36.     On September 5, 2025, The BIA issued a ruling in *Matter of Yajure Hurtado* stating that all noncitizens who enter the United States without Inspection are to be treated as though they are "applicants for admission" under 8 U.S.C. 1225(b). This is a departure from decades of precedent where noncitizens found in the interior of the United States were instead detained under 8 U.S.C. § 1226, which allows them to be eligible for custody redetermination in the form of a bond hearing before an Immigration Judge.

37.     On November 25, 2025, the Central District Court of California issued a final ruling in *Maldonado Bautista v Santacruz.* This ruling created a nationwide class certification for noncitizens like the petitioner who would otherwise be permitted to seek custody redetermination and issued injunctive relief on their behalf. Despite this ruling Immigration Judges are still referring to *Matter of Yajure Hurtado* stating that they do not have jurisdiction to hold custody redetermination hearings.

**LEGAL FRAMEWORK:**

## PETITIONER IS NOT DETAINED UNDER 8 U.S.C.

## §1225

38.    Recently, the BIA has vacated and overruled decades of analysis regarding what statutory detention scheme for people who have entered without inspection. In *Matter of Yajure Hurtado* and *Matter of Q. Li,* the BIA held that all noncitizens who entered without inspection are subject to mandatory detention under 8 U.S.C. §1225(b)(2). *Matter of Yajure Hurtado,* 29 I&N Dec. 216 (BIA 2025). It created a sweeping new rule that strips most noncitizens who entered without inspection of the right to seek bond fro an Immigration Judge, regardless of how long they have been residing in the country and where they were apprehended by immigration authorities. In the interest of judicial economy, the Plaintiff chooses to address this hypothetical argument, in the event that DHS chooses to ignore decades of legal analysis regarding statutory interpretation in favor of *Matter of Yajure Hurtado, Supra*.

39.    The INA prescribes three basic forms of detention for noncitizens in removal proceedings. First 8 U.S.C. § 1226 authorizes the detention of noncitizens in standard non-expedited removal proceedings before an Immigration Judge. *See* 8 U.S.C. § 1226, 8 U.S.C.§ 1229a. Individuals in 8 U.S.C. § 1226(a) detention are entitled to bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 103.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, *see* 8 U.S.C.§ 1226(c). Second

14

the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other *recent arrivals* seeking admission referred to under § 1225(b)(2). Finally, the INA also provides for detention of noncitizens who have been previously ordered removed, including individuals in withholding-only proceedings, *see* 8 U.S.C. § 1231(a)-(b).

40.     The detention provisions at 8 U.S.C. § 1226(a) and § 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, Pub. L. No. 104–208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section236(c) was most recently amended earlier this year by the LRA, Pub. L. No.119-1, 139 Stat. 3 (2025).

41.     Following the enactment of the IIRIRA, the Executive Office of Immigration Review drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under 8 U.S.C. § 1225 and that they were instead detained under 8 U.S.C. § 1226(a). See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). In the decades that followed, most noncitizens who entered without inspection—unless they were subject to some other detention authority—received bond hearings. This practice was also consistent with the practice prior the enactment of the IIRIRA, in which noncitizens who were not deemed "arriving" were entitled to a custody hearing before an IJ or other hearing officer. See 8 U.S.C. § 1252(a)

(1994); see also H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that § 1226(a) simply "restates" the detention authority previously found at § 1252(a)).

42.    On July 8, 2025, DHS issued a memo to all employees of Immigration and Customs Enforcement ("ICE") stating that "[t]his message serves as notice that DHS, in coordination with the Department of Justice (DOJ), has revisited its legal position on detention and release authorities. DHS has determined that 8 U.S.C. § 1225, rather than § 1226, is the applicable immigration detention authority for all applicants for admission. The following interim guidance is intended to ensure immediate and consistent application of the Department's legal interpretation while additional operational guidance is developed." The memo further stated DHS' new position with regard to custody determinations as follows:

> An "applicant for admission" is an alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. 8 U.S.C. § 1225(a)(1). **Effective immediately, it is the position of DHS that such aliens are subject to detention under 8 U.S.C. § 1225(b) and may not be released from ICE custody except by 8 U.S.C. § 1182(d)(5) parole.** These aliens are also ineligible for a custody redetermination hearing ("bond hearing") before an immigration judge and may not be released for the duration of their removal

proceedings absent a parole by DHS. For custody purposes, these aliens are now treated in the same manner that "arriving aliens" have historically been treated. **The only aliens eligible for a custody determination and release on recognizance, bond, or other conditions under 8 U.S.C. § 1226(a) during removal proceedings are aliens admitted to the United States and chargeable with deportability under 8 U.S.C. § 1227, with the exception of those subject to mandatory detention under 8 U.S.C. § 1226(c).**

Moving forward, ICE will not issue Form I-286, Notice of Custody Determination, to applicants for admission because Form I-286 applies by its terms only to custody determinations under 8 U.S.C. § 1226 and part 236 of Title 8 of the Code of Federal Regulations. With a limited exception for certain habeas petitioners, on which the Office of the Principal Legal Advisor (OPLA) will individually advise, if Enforcement and Removal Operations (ERO) previously conducted a custody determination for an applicant for admission still detained in ICE custody, ERO will affirmatively cancel the Form I-286.

*See*    https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-

for-applications-for-admission

43. As a result, according to DHS *all* noncitizens who have entered the United States without inspection and are subject to the grounds of inadmissibility, including long-time U.S. residents, are now considered to be subject to mandatory detention under 8 U.S.C. § 1225(b) and ineligible for release on bond. Conversely, according to DHS "[t]he only aliens eligible for a custody determination and release on recognizance, bond, or other conditions under 8 U.S.C. § 1226(a) during removal proceedings are aliens admitted to the United States and chargeable with deportability under 8 U.S.C. § 1227, with the exception of those subject to mandatory detention under 8 U.S.C. § 1226(c)." *Id.*

44. The plain text of 8 U.S.C. § 1226 demonstrates that it, not 8 U.S.C. § 1225(b), applies to Petitioner's detention. 8 U.S.C. § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citation omitted). As the Supreme Court has remarked, 8 U.S.C. § 1226(a) "sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of a[] [noncitizen] 'pending a decision on whether the [noncitizen] is to be removed from the United States.'" *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting 8 U.S.C. § 1226(a)). § 1226(c) carves out a statutory category of noncitizens for whom detention is mandatory, consisting of individuals who have

18

committed certain "enumerated . . . criminal offenses [or] terrorist activities." 8 U.S.C. § 1226(c). Among the individuals carved out and subject to mandatory detention are certain categories of "inadmissible" noncitizens. *See* 8 U.S.C. § 1226(c)(1)(A), (D), (E). This is in stark contrast with mandatory detention provision under 8 U.S.C. § 1225(b)(2), which "supplement[s] § [1226's] detention scheme." *Diaz,* 53 F.4th at 1197. § 1225(b) "applies primarily to [noncitizens] seeking entry into the United States ('applicants for admission' in the language of the statute)." *Jennings*, 583 U.S. at 297; *see* 8 U.S.C. § 1225(b) (entitled "Inspection of applicants for admission"). September 1, 2023, BIA Decision (The BIA remanded the case so that the respondent may receive a custody redetermination hearing before the Immigration Judge. Noting that "respondent last entered the United States without being admitted or paroled" and holding that "we are unaware of any precedent stating that an Immigration Judge lacks authority to redetermine the custody conditions of a respondent in removal proceedings under the circumstances here.").

45.    Numerous District Courts have rejected *Yajure Hurtado. See Sampiao v. Hyde,* 2025 WL 2607924 (D. Mass. Sept. 9, 2025) (noting court's disagreement with BIA's analysis in *Yajure Hurtado*)*; See Also Jimenez v. FCI Berlin, Warden,* No. 25-cv-326-LM-AJ (D.N.H. Sept. 8, 2025) (noting that the court was not persuaded by BIA's analysis in *Yajure Hurtado*); *See Also Doe v. Moniz,* 2025 WL 2576819 (D. Mass. Sept. 5, 2025) (finding that detaining the petitioner without bond

19

violated his due process rights, and because he had been residing in the United States for some time, he was not "seeking admission" when he was detained, so section 1225 did not apply to him); *See Also Romero v. Hyde,* 2025 WL 2403827 (D. Mass. Aug. 19, 2025) (finding that the petitioner was subject to discretionary detention under section 1226, not mandatory detention under section 1225, and that applying section 1225(b)(2)(A) to all "applicants for admission" would contradict the agency's regulations, published guidance, the majority of precedent, and the plain meaning of the statute); *See Also Martinez v. Hyde,* 2025 WL 2084238 (D. Mass. July 24, 2025) (holding that the noncitizen petitioner, who was apprehended within the United States after crossing the border illegally, was not subject to mandatory detention, as she was released on recognizance under section 1225, not section 1226); *See Also Dos Santos v. Noem,* 2025 WL 2370988 (D. Mass. Aug. 14, 2025) (ordering the noncitizen petitioner's release from detention after he was arrested on a warrant citing section 1226, and rejecting the government's argument that he was detained under section 1225(b)(2) as contravening the plain text of Section 1226(a) and rendering superfluous Section 1226(c)); *See Also Gomes v. Hyde,* 2025 WL 1869299 (D. Mass. July 7, 2025) (rejecting the government's statutory construction and holding that the noncitizen petitioner's detention was governed by section 1226(a)'s discretionary framework because he was arrested on a warrant and ordered detained under section 1226); *See Also Lopez Benitez v. Francis*, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025) (concluding that the plain language and structure of the

20

statute support the conclusion that the mandatory detention provision of § 1225, which applies to noncitizens "seeking admission," did not apply to the noncitizen petitioner who had never been lawfully admitted but had been residing in the United States for over two years, and holding that the petitioner was excused from the administrative exhaustion requirement because he had no genuine opportunity for adequate relief and raised a substantial constitutional question); *See Also Samb v. Joyce,* 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025) (holding that the petitioner was not subject to mandatory detention as a noncitizen "seeking admission" to the country under 8 U.S.C. § 1225, but instead could only be subject to detention on a discretionary basis under § 1226, and finding that the petitioner's due process rights were violated when he was re-arrested without any individualized assessment or determination); *See Also Leal-Hernandez v. Noem*, 2025 WL 2430025 (D. Md. Aug. 24, 2025) (rejecting the government's statutory construction and finding that the petitioner, who had been present in the United States for more than 20 years at the time of his arrest, is not an "arriving alien" and is therefore subject to § 1226(a), under which he should be released on bond); *See Also Kostak v. Trump*, 2025 WL 2472136 (W.D. La. Aug. 27, 2025) (finding that the government's position that Section 1225 applies "because Petitioner is present in the United States without being admitted" is contrary to the Supreme Court's analysis of the application of 1225 to arriving aliens and would render Section 1226 unnecessary); *See Also Pizarro Reyes v. Raycraft*, 2025 WL 2609425 (E..D. Mich. Sept. 9, 2025)

(disagreeing with BIA's analysis in *Yajure Hurtado*); *See Also Lopez-Campos v. Raycraft,* 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *See Also Carmona-Lorenzo v. Trump*, 2025 WL 2531521 (D. Neb. Sept. 3, 2025); *See Also Cortes Fernandez v. Lyons*, 2025 WL 2531539 (D.Neb. Sept. 3, 2025); *See Also Palma Perez v. Berg*, 2025 WL 2531566 (D. Neb. Sept 3, 2025); *See Also O.E. v. Bondi*, 2025 WL 2466670 (D. Minn. Aug. 27, 2025); *See Also Jacinto v. Trump*, 2025 WL 2402271 (D. Neb. Aug. 19, 2025); *See Also Maldonado v. Olson*, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *See Also Garcia Jimenez v. Kramer*, 2025 WL 2374223 (D. Neb. Aug. 14, 2025); *See Also Anicasio v. Kramer*, 2025 WL 2374224 (D. Neb. Aug. 14, 2025); *See Also Cuevas Guzman v. Andrews*, 2025 WL 2617256, at *3 n.4 (E.D. Cal. Sept. 9, 2025) (distinguishing *Yajure Hurtado*); *See Also Caicedo Hinestroza v. Kaiser*, 2025 WL 2606983 (N.D. Cal. Sept. 9, 2025); *See Also Zaragoza Mosqueda v. Noem*, 2025 WL 2591530, at *7 (C.D. Cal. Sept. 8, 2025) (noting that BIA's decision in *Yajure Hurtado* renders requiring prudential exhaustion futile); *See Also Hernandez Nieves v. Kaiser*, 2025 WL 2533110 (N.D. Cal. Sept. 3, 2025); *See Also Vasquez Garcia et al. v. Noem*, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); *See Also Arrazola-Gonzalez v. Noem*, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *See Also Rosado v. Figueroa*, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025); *See Also Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025).

46.    On November 20, 2025, the district court granted partial summary

judgment on behalf of individual plaintiffs and on November 25, 2025, certified a

nationwide class and extended declaratory judgment to the certified class.

*Maldonado Bautista, v Santacruz,* No. 5:25-CV-01873-SSS-BFM, --- F. Supp. 3d -

--, 2025 WL 3289861, at *11 (C.D. Cal. Nov. 20, 2025) (order certifying Plaintiffs-

Petitioners' proposed nationwide Bond Eligible Class, incorporating and extending

declaratory judgment from Order Granting Petitioner's Motion for Partial Summary

Judgment).

47.*See Valdez v. Joyce*, No. 25 CIV. 4627 (GBD), 2025 WL 1707737, at *4

(S.D.N.Y.

June 18, 2025) (ordering release of petitioner re-detained after an immigration court

hearing and concluding "Respondents ongoing detention of Petitioner with no

process at all, much less prior notice, no showing of changed circumstances, or an

opportunity to respond, violates his due process rights."); *Chipantiza-Sisalema v.*

*Francis*, 25 CIV. 5528 (AT) (S.D.N.Y. July 13, 2025) (same); *Lopez v. Sessions*,

No. 18 CIV. 4189 (RWS), 2018 WL 2932726, at *12 (S.D.N.Y. June 12, 2018)

("Petitioner's re-detention, without prior notice, a showing of changed

circumstances, or a meaningful opportunity to respond, does not satisfy the

procedural requirements of the Fifth Amendment").

48.    Thus, the plain text of 8 U.S.C. § 1226(a) applies to noncitizens like

Petitioner. The fact that 8 U.S.C. § 1226(a) is the default rule for arrest and detention

and that section (c) carves out exceptions further demonstrates that the discretionary

23

bond procedures apply to noncitizens like Respondent who are present without being admitted or paroled and have not been implicated in any crimes set forth in subsection (c). The Supreme Court has held that when Congress creates "specific exceptions" to a statute's applicability, it "proves" that absent those exceptions, the statute generally applies. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010).

49.     The recent enactment of LRA further supports this finding. The Act added language to 8 U.S.C. § 1226(c) that directly references people who have entered without inspection or who are present without authorization. *See* Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025). Pursuant to these amendments, noncitizens charged as inadmissible under 8 U.S.C. § 1182(a)(6)(A) (the inadmissibility ground for entry without inspection) or 8 U.S.C. § 1182(a)(7)(A) (the inadmissibility ground for lacking valid documentation to enter the United States) *and* who have been arrested, charged with, or convicted of new certain crimes (not previously covered by 8 U.S.C. § 1226(c)) are now subject to § 1226(c)'s mandatory detention provisions. *See* 8 U.S.C. § 1226(c)(1)(E). By including such individuals under 8 U.S.C. § 1226(c), Congress reaffirmed that § 1226(a) covers noncitizens who are not subject to section (c) but are charged as removable under § 212(a)(6)(A) or 212(a)(7). *Gieg v. Howarth*, 244 F.3d 775, 776 (9th Cir. 2001) ("[w]hen Congress acts to amend a statute, [courts] presume it intends its amendment to have real and substantial effect.").

50.     If 8 U.S.C. § 1226(a) did not apply to Respondent—like DHS contends—vast portions of the 8 U.S.C. § 1226 would be rendered meaningless. This is because DHS contends that noncitizens like Respondent who entered without inspection are really "applicants for admission" and therefore subject to mandatory detention under 8 U.S.C. § 1225(b)(2). Courts have made it clear that statutes must be interpreted as a whole, "giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." *Shulman v. Kaplan*, 58 F.4th 404, 410–11 (9th Cir. 2023) (quoting *Rodriguez v. Sony Computer Ent. Am., LLC*, 801 F.3d 1045, 1051 (9th Cir. 2015)).

51.     It is noteworthy that "[w]hen Congress adopts a new law against the backdrop of a longstanding administrative construction," courts "generally presume[] the new provision should be understood to work in harmony with what has come before." *Monsalvo Velazquez v. Bondi*, 145 S. Ct. 1232, 1242 (2025) (internal quotation marks omitted). Here, DHS' sudden reversal—particularly after Congress just recently amended 8 U.S.C. § 1226 to include the LRA provisions— further undermines the Department's argument that the detention authority for noncitizens like Respondent lies under 8 U.S.C. § 1225(b) instead of 8 U.S.C. § 1226(a).

52.     As noted above, DHS' new position contends that Respondent is subject to mandatory detention under 8 U.S.C. § 1225(b)(A) because he is an

25

"applicant for admission." But 8 U.S.C. § 1225(b)(A) concerns a completely different category of noncitizens. In *Jennings*, the Supreme Court discussed 8 U.S.C. § 1225 as part of a process that "generally begins at the Nation's borders and ports of entry, where the Government must determine whether a [noncitizen] seeking to enter the country is admissible." 583 U.S. at 287. As for 8 U.S.C. § 1226, *Jennings* described it as governing "the process of arresting and detaining" noncitizens who are living "inside the United States" but "may still be removed," including noncitizens "who were inadmissible at the time of entry." *Id*. at 288. The Court then summarized the distinction as follows: "In sum, U.S. immigration law authorizes the Government to detain certain [noncitizens] seeking admission into the country under §§ [235](b)(1) and (b)(2). It also authorizes the Government to detain certain [noncitizens] *already in the country pending the outcome of removal proceedings* under §§ [236](a) and (c)." *Id*. at 289 (emphasis added); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (a noncitizen "who *tries to enter* the country illegally is treated as an applicant for admission . . . and a [noncitizen] who is detained *shortly after unlawful entry* cannot be said to have effected an entry") (emphasis added) (cleaned up).

53.    DHS' newfound position misconstrues the phrase "applicant for admission" to suggest that every person, other than those who have been admitted, are subject to mandatory detention. 8 U.S.C. § 1225(a)(1) defines an "applicant for

26

admission" as a person who is "present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). According to DHS, 8 U.S.C. § 1225(b)(1) generally applies to arriving aliens and 8 U.S.C. § 1225(b)(2) serves as a broader catchall provision for all applicants for admission not covered by 8 U.S.C. § 1225(b)(1). In other words, DHS argues that every noncitizen who entered without parole or inspection is an "applicant for admission" pursuant to § 1225(a)(1) and is therefore subject to mandatory detention. However, 8 U.S.C. § 1225(b)(2)(A) states in full that: Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an *alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title*. *Id*. (emphasis added).

54.    Thus, for § 1225(b)(2)(A) to apply, several conditions must be met—in particular, an "examining immigration officer" must determine that the individual is: (1) an "applicant for admission"; (2) "seeking admission"; and (3) "not clearly and beyond a doubt entitled to be admitted." DHS' position conveniently overlooks these conditions and treats "applicants for admission" the same as those "seeking admission." The phrase "seeking admission" is undefined in the statute but necessarily implies some sort of present-tense action. *See Matter of M-D-C-V-*, 28 I. & N. Dec. 18, 23 (BIA 2020) ("The 'use of the present progressive, like use of the present participle, denotes an ongoing process.'" (quoting *Al Otro Lado v. Wolf*, 952

F.3d 999, 1011-12 (9th Cir. 2020))). Indeed, only those who take affirmative acts, like submitting an "application for admission," are those that can be said to be "seeking admission" within § 1225(b)(2)(A).

55.    By limiting (b)(2) to those "seeking admission," Congress confirmed that it did not intend to sweep into this section individuals like Petitioner who have already entered and are now residing in the United States. *See Torres v. Barr*, 976 F.3d 918, 927 (9th Cir. 2020) (en banc) (holding that an individual submits an "application for admission" only at "the moment in time when the immigrant actually applies for admission into the United States.") Accordingly, 8 U.S.C. § 1225(b)(2)'s reference to "applicants for admission" must be read "in their context and with a

view to their place in the overall statutory scheme." *San Carlos Apache Tribe v. Becerra*, 53 F.4th 1236, 1240 (9th Cir. 2022) (citation omitted); *see also King v. Burwell*, 576 U.S. 473, 492 (2015) (looking to an act's "broader structure . . . to determine [the statute's] meaning"). The Board's recent decision in *Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025) reinforces this position. The Board held that a noncitizen who was apprehended "approximately 5.4 miles away from a designated port of entry and 100 yards north of the border" was detained under 8 U.S.C. § 1225(b) and not 8 U.S.C. § 1226(a). *Id*. at 67. In other words, the noncitizen was apprehended upon arrival. The Board then explained that such persons are properly

treated as "arriv[ing] in the United States," given that they are "detained shortly after unlawful entry," and "'[are] apprehended' just inside 'the southern border, and not at a point of entry, on the same day [they] crossed into the United States.'" *Id.* at 68 (quoting *Matter of M-D-C-V-*, 28 I. &. N. Dec. 18, 23 (BIA 2020)). Notably, the Board's decision supports the argument that 8 U.S.C. § 1226(a) "applies to [noncitizens] already present in the United States," while 8 U.S.C. § 1225(b) "applies primarily to [noncitizens] seeking entry into the United States and authorizes DHS to detain a[] [noncitizen] without a warrant at the border." *Id.* at 70 (internal quotation marks omitted).

56. The broader statutory structure of immigration detention authority also demonstrates the inapplicability of 8 U.S.C. § 1225(b) to Respondent's case. *See King*, 576 U.S. at 492 (explaining that an act's "broader structure" can be a useful tool "to determine [a statute's] meaning."); *see also Biden v. Texas*, 597 U.S. 785, 799–800 (2022) (looking to statutory structure to inform interpretation of INA provision). This is particularly true where "a provision . . . may seem ambiguous in isolation." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 371 (1988). In such situations, the statute's meaning "is often clarified by the

remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *Id.*

57.    The broader text of 8 U.S.C. § 1225 reinforces this understanding of the two sections' structure and application. 8 U.S.C. § 1225 concerns "expedited removal of inadmissible *arriving* [noncitizens]." 8 U.S.C. § 1225 (emphasis added). Paragraph (b)(1) encompasses only the "inspection" of certain "arriving" noncitizens and other recent entrants the Attorney General designates, and only those who are "inadmissible" for having misrepresented information to an inspecting officer or for lacking documents to enter the United States. Paragraph (b)(2) is similarly limited to people applying for admission when they arrive in the United States. The title explains that this paragraph addresses the "[i]nspection of other [noncitizens]," i.e., those noncitizens who are "seeking admission," but whom (b)(1) does not address. *Id*. § 1225(b)(2), (b)(2)(A).

58.    By limiting (b)(2) to those "seeking admission," Congress confirmed that it did not intend to sweep into this section individuals like Respondent who have already entered and are now residing in the United States. Otherwise, the language "seeking admission" in 8 U.S.C. § 1225(b)(2) serve no purpose, as the statute specifies that it is addressing a person who is both an "applicant for admission" and who is determined to be "seeking admission." *Id*.

59.    Furthermore, subparagraph (b)(2)(C) addresses the "[t]reatment of [noncitizens] arriving from contiguous territory," i.e., "the case of [a noncitizen] . . . who is arriving on land." 8 U.S.C. § 1225(b)(2)(C). This language further underscores Congress's temporal requirements in 8 U.S.C. § 1225 and focus on

those who are arriving into the United States. Similarly, the title of § 1225 refers to the "inspection" of "inadmissible arriving" noncitizens. *See, e.g., Dubin v. United States*, 599 U.S. 110, 120–21 (2023) (relying on section title to help construe statute).

60.     Finally, the entire statute is premised on the idea that an inspection occurs near the border and shortly after arrival, as the statute repeatedly refers to "examining immigration officer[s]," 8 U.S.C. § 1225(b)(2)(A), (b)(4), and sets out procedures for "inspection[s]" of people "arriving in the United States," *Id*. § 1225(a)(3), (b)(1), (b)(2), (d).

61.     It is no surprise that *Matter of Yajure Hurtado* has been rejected by numerous District Courts. 29 I&N Dec. 216 (BIA 2025).

62.     The Court possesses jurisdiction to release Respondent on bond or, in the alternative, release on their own recognizance, pursuant to 8 U.S.C. § 1226(a).

## CLAIMS FOR RELIEF

## COUNT ONE

## VIOLATION OF THE IMMIGRATION AND

## NATIONALITY ACT

63.     Petitioner repeats, re-alleges, and incorporates by reference eadch and every allegation in the preceding paragraphs as if fully set forth herein.

64.     As a member of the Bond Eligible Class, Petitioner is entitled ot consideration for release on bond under 8 U.S.C. § 1226 (a).

65.    The order granting partial summary judgment in *Maldonado Bautista* holds that Respondents violate the INA in applying the mandatory detention statute at § 1225 (b) (2) to class members.

66.    The order granting class certification in *Maldonado Bautista* further orders that "when considering this determination with the MSJ Order, the Court extends the same declaratory relief granted to Petitioners to the Bond Eligible Class as a whole."

67.    Respondents are parties to *Maldonado Bautista* and bound by the Court's declaratory judgment, which has the full "force and effect of a final judgment." 28 U.S.C. § 2201(a).

68.    By denying Petitioner a bond hearing under § 1225 (b)(2), Respondents violate Petitioner's statutory rights under the INA and the Court's judgment in *Maldonado Bautista*.

## COUNT TWO

### VIOLATION OF 8 USC § 1226(A), 1225(B)

### *Mandatory Detention for Those Seeking Admission*

69.    Petitioner restates and re-alleges all paragraphs as if fully set forth here.

70.    Circa 1999 Mr. Mejia Ayala entered the United States without inspection. DHS issued him a Notice to Appear under section 1229a of the Act, which alleged that he was not admitted or paroled after inspection into the United States pursuant to 8 U.S.C. § 1182 (a)(6(A)(i).

71. At the time of Petitioner's arrest, Petitioner had been living in the United States for approximately 26 years and is eligible for relief via Cancellation of Removal for Non-Permanent Residents 8 U.S.C. § 1229b (b). Therefore, petitioner was not subject to detention pursuant to § 1225 (b) and any custody must proceed, if at all, under § 1226 (a).

72. Petitioner continuing detention is therefore unlawful.

## COUNT THREE

## CONTINUED DETENTION CONSTITUTES A

## VIOLATION OF DUE PROCESS

73. Petitioner incorporates all factual allegations as though restated here.

74. ICE detained Petitioner without reasonable suspicion and continues to do so in violation of his constitutional rights protected under the Fifth Amendment.

75. The Due Process Clause of the Fifth Amendment forbids the government from depriving any person of liberty without due process of law.

76. Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that the Due Process Clause of the Fifth Amendment protects.

77. First, immigration detention must always "bear[] a reasonable relation to the purpose for which the individual was committed." *Demore v Kim,* 538 U.S. 510, 527 (2003) (*citing Zadvydas,* 533 U.S. at 690).

78.     Whereas here, the government has released the Petitioner pursuant to 8 U.S.C. § 1226 (a) to apply for asylum, Respondent's cannot simply re-arrest and re-detain petitioner for no reason at all.

79.     Second, the Due Process Clause requires that any deprivation of Petitioner's liberty be narrowly tailored to serve a compelling government interest. *See Reno v Flores*, 507 U.S. 292, 301-02 (1993) (holding that due process "forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest"); *Demore*, 538 U.S. at 528 (applying less rigorous standard for "deportable aliens").

80.     Petitioner's ongoing imprisonment without hope of a bond hearing does not satisfy that rigorous standard, given his length of tiem in the United States, lack of a criminal hisotyr, and relief available to him before the immigration courts.

81.     Third, "the Due Process Clause includes protection against unlawful or arbitrary personal restraint or detention." *Zadvydas*, 533 U.S. at 718 (2001) (Kennedy, J., dissenting).

82.     Petitioner's long presence in the United States without criminal history hardly justifies indefinite detention and denial of his right ot a bond hearing under § 1226 (a).

83.     The previous finding of an immigration judge to dismiss the removal case against the petitioner further underlines that his continued detention without an

34

opportunity for a bond hearing is unjustified.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this Court grant the following relief:

1) Assume jurisdiction over this matter;

2) Issue a writ of habeas corpus requiring that within one day, Respondents release Petitioner;

3) Alternatively, issue a writ of habeas corpus requiring Respondents to release petitioner unless they provide a bond hearing under 8 U.S.C. § 1226(a) within seven days;

4) Award Petitioner attorney fees and costs under the Equal Access to Justice Act (EAJA), as amended, 28 U.S.C. § 2412, and on any other basis justified under law; and

5) Grant any other and further relief that this court deems just and proper.

I affirm, under penalty of perjury, that the foregoing is true and correct.

**ATTORNEYS FOR PETITIONER**

Dated: February 9, 2026          By:

                           /s/Logan Duplessis
                           Logan Duplessis
                           Louisiana State Bar No.: 41733
                           Rozas and Associates
                           7967 Office Park Blvd
                           Baton Rouge, LA 70809
                           (225) 341-6945
                           logan.duplessis@rozaslaw.com

Dated: February 9, 2026          By:

                           /s/Daniel Lopez Rubio
                           Daniel Lopez Rubio, Esq.
                           Alabama State Bar No.: 3842e16e
                           Solid Legal, P.C.
                           242 W. Valley Ave., STE 101
                           Birmingham, Alabama 35209
                           (205) 576-0000
                           daniel@solidlegal.org

36

**VERIFICATION OF COUNSEL**

I, Logan Duplessis, hereby certify that I am familiar with the case of the named petitioner and that the facts as stated above are true and correct to the best of my knowledge and belief.

/s/ Logan Duplessis
Logan Duplessis

**CERTIFICATE OF SERVICE**

I, Logan Duplessis, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent by mail to those indicated as non-registered participants on February 9, 2026.

*/s/ Logan Duplessis*
Logan Duplessis