UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **BENANCIO MEJIA AYALA,**  Petitioner, | |
| v. | **Case No. 1:26-cv-204-CLM-GMB** |
| **MELISSA HARPER, et al.,**  Respondents. | |

## MEMORANDUM OPINION

The Department of Homeland Security is holding Benancio Mejia Ayala in Louisiana pending his § 1229a removal hearing this Friday, February 27, 2026. Under its reading of 8 U.S.C. § 1225(b)(2), DHS refuses to permit Mejia to seek bond from an immigration judge before Friday's removal hearing. Mejia asks this court to issue a writ of habeas corpus or a preliminary injunction that would force DHS to give him a bond hearing this week.

As explained below, the court must **DISMISS** respondents Todd Lyons, Kristi Noem, Pamela Bondi, and Barry Smith because they do not have immediate custody of Mejia. Because DHS correctly reads 8 U.S.C. § 1225(b)(2) to forbid a bond hearing before Mejia's § 1229a hearing, and that result does not violate Mejia's Fifth Amendment right to due process, the court must also **DENY** Mejia's habeas petition (doc. 1) on the merits and **DENY AS MOOT** Mejia's corresponding motion for a preliminary injunction (doc 2).

## FACTUAL BACKGROUND

### A. Mejia's Entry and Detention

Mejia is a Mexican citizen. He entered the United States in 1999 without permission and without encountering an immigration official. Mejia has thus lived in the United States without admission for about 27 years.

Local officials in Coffee County, Tennessee, arrested Mejia for speeding and driving without a license on February 3, 2026. Mejia told the officers that he entered the United States unlawfully. So the officers contacted ICE.

1

Mejia was released without charges the next day, and local ICE officials promptly detained him with a Form I-200 civil warrant for arrest of an alien. An ICE officer interviewed Mejia that day. Mejia confirmed that he was neither a United States citizen nor admitted to be in the United States. Meija told the interviewer that he was unmarried and had six children who were U.S. citizens because they were born in the United States. The ICE officer asked Mejia if he was willing to voluntarily depart the United States, and Meija declined.

So Mejia was given a Notice to Appear at a removal hearing. The notice told Mejia that he was charged with being present in the United States without admission and without proper documentation, violations of 8 U.S.C. §§ 1182(a)(6)(A)(i) and 1182(a)(7)(A)(i) respectively. Mejia was then moved to a holding facility in Gadsden, Alabama, where he remained until he was moved to Winnfield, Louisiana, on February 9, 2026. Mejia has remained at Winnfield ever since and has thus been in ICE custody since February 4, 2026.

**B. Mejia's Petition**

Eighteen minutes after ICE officials signed Mejia out of the Gadsden facility, the Clerk's Office received Mejia's writ of habeas corpus (doc. 1). Mejia also filed a TRO motion under Rule 65(b) and motion for preliminary injunction under Rule 65(a) (doc. 2). The court denied the TRO motion because Meija failed to include the requisite Rule 65(b)(1)(B) certification but ordered the Government to respond to the remaining habeas petition and motion for preliminary injunction within two days (doc. 3).

Because time was short, the court invoked Rule 65(a)(2) to consolidate the hearing on Mejia's motion for a preliminary injunction and habeas petition (doc. 7). At the hearing, Mejia's attorneys told the court that, at his February 27th removal hearing, Mejia would seek to have his status changed from "alien who is inadmissible" to "alien lawfully admitted for permanent residence" under 8 U.S.C. § 1229b(b)(1)—meaning that Mejia would not contest DHS's initial charge of removability under 8 U.S.C. §§ 1182(a)(6) and 1182(a)(7). Mejia's attorneys argued that Mejia needed to be released on bond to help them prepare his case for a status change under §1229b(b)(1) and that the failure to give Mejia a bond hearing would violate Mejia's liberty interest that accrued over the 27 years Mejia lived in the United States without admission.

## STATUTORY BACKGROUND

Mejia bases his statutory argument for a bond hearing on the premise that, when facing a removal hearing, aliens who entered and lived within the United States without admission are given more process than aliens encountered at the border and ports of entry who never entered the U.S. As explained below, Congress agreed with Mejia until 1996. As you will see, Congress changed its mind about how to treat aliens who entered without admission, choosing to stop giving them the process afforded to aliens who were lawfully admitted and instead treat them like aliens who never entered.

**A. Entry-based status (pre-1996)**

Congress defines an "alien" as "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3). But Congress has long treated aliens subject to removal differently based on their status. Before 1996, Congress divided aliens subject to removal proceedings based on whether they had ***entered*** the United States, regardless of whether that entry came from lawful admission or avoiding immigration officials. *See* 8 U.S.C. § 1101(a)(13) (1994) (defining "entry" as "any coming of an alien into the United States"). Aliens encountered at the border or ports of entry (*i.e.*, aliens who had not entered the United States) were subject to summary exclusion proceedings under 8 U.S.C. §§ 1225-27 (1994), while aliens who entered after admission were afforded more rights and process if later subject to removal proceedings. *See* 8 U.S.C. §§ 1251-52 (1994). Because aliens who successfully evaded immigration officials had nonetheless "entered" the United States, they were given the same process for removal as aliens who entered upon admission:

> An alien who entered the United States without inspection or at any time or place other than as designated by the Attorney General or is in the United States in violation of this chapter or any other law of the United States is deportable.

*See* 8 U.S.C. § 1251(a)(1)(B) (1994).

This scheme—sometimes called the "entry loophole"—meant that aliens who broke the law by avoiding immigration officials were treated better than aliens who followed the rules by presenting themselves for inspection at the

border or ports of entry. Congress had thus created "a perverse incentive to enter at an unlawful rather than a lawful location." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020).

**B. Admission-based status (post-1996)**

Congress closed the entry loophole with two 1996 acts: the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA).

1. *AEDPA*: Congress passed AEDPA in April 1996. To stop treating aliens who sidestepped immigration officials like aliens who were properly admitted, Congress added this provision to the statute governing removal of aliens who entered the United States (then 8 U.S.C. § 1251):

> SEC. 414. EXCLUSION OF ALIENS WHO HAVE NOT BEEN INSPECTED AND ADMITTED.
>
> (a) IN GENERAL.—Section 241 of the Immigration and Nationality Act (8 U.S.C. 1251) is amended by adding at the end the following new subsection:
> "(d) Notwithstanding any other provision of this title, an alien found in the United States who has not been admitted to the United States after inspection in accordance with section 235 is deemed for purposes of this Act to be seeking entry and admission to the United States and shall be subject to examination and exclusion by the Attorney General under chapter 4. In the case of such an alien the Attorney General shall provide by regulation an opportunity for the alien to establish that the alien was so admitted.".
> (b) EFFECTIVE DATE.—The amendment made by subsection (a) shall take effect on the first day of the first month beginning more than 180 days after the date of the enactment of this Act.

Pub. L. 104-132 § 414(a) (circle added). As circled, Congress "deemed" persons who avoided the admission process "to be seeking entry and admission to the United States" and thus subjected them to the same examination and exclusion procedure as aliens who never entered. *Id.* Despite being signed into law, this provision never took effect because Congress passed IIRIRA before its effective date. *See* Pub. L. 104-208 § 308(d)(2)(D) (repealing AEDPA § 414).

2. *IIRIRA*: While AEDPA merely added a clause to change the treatment of aliens who avoided inspection and admission, IIRIRA rewrote some, and restructured most, of the relevant provisions of the Immigration and

Nationality Act (INA). *See id.* § 308 (redesignation and reorganization of INA provisions). Among the relevant changes, Congress:

- Replaced the definition of "entry" with a definition of the terms "admission" and "admitted," which now mean "with respect to an alien, the ==lawful entry== of the alien into the United States after inspection and authorization by an immigration officer." *Compare* 8 U.S.C. § 1101(a)(13)(A) (1994) *with* 8 U.S.C. § 1101(a)(13)(A) (2026) (highlight added);
- Replaced the term "deportation" with "removal" in numerous provisions; and,
- Moved the provisions for deporting admitted aliens from 8 U.S.C. §§ 1251-1252 to 8 U.S.C. §§ 1226-27, where they now reside next to the removal provision for un-admitted aliens (*i.e.,* applicants for admission), *see* 8 U.S.C. § 1225.

The biggest change, at least for this case, was the rewriting of 8 U.S.C. § 1225 to govern the inspection and removal of aliens who are not admitted to the United States. *See* Pub. L. 104-208 § 302. Congress started by creating and defining "applicant for admission" to include ***both*** aliens encountered at the border and those who entered the country without admission:

> SEC. 302. INSPECTION OF ALIENS; EXPEDITED REMOVAL OF INADMISSIBLE ARRIVING ALIENS; REFERRAL FOR HEARING (REVISED SECTION 235).
>
> (a) IN GENERAL.—Section 235 (8 U.S.C. 1225) is amended to read as follows:
>
> "INSPECTION BY IMMIGRATION OFFICERS; EXPEDITED REMOVAL OF INADMISSIBLE ARRIVING ALIENS; REFERRAL FOR HEARING
>
> "SEC. 235. (a) INSPECTION.—
> "(1) ALIENS TREATED AS APPLICANTS FOR ADMISSION.—An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this Act an applicant for admission.

*Id.* (now 8 U.S.C. § 1225(a)(1)). Congress divided these "applicants for admission" into three general groups: (a) aliens encountered at the border or a port of entry (§ 1225(b)(A)(i)); (b) aliens who were not admitted or paroled into

the United States and cannot prove they have been present for at least two years (§ 1225(b)(A)(iii)); and (c) any other alien who is an "applicant for admission" that falls outside the first two categories (§ 1225(b)(B)(2)). The third 'catch-all' category would include aliens like Mejia who entered the United States without admission and have lived here for more than two years.

### C. Removal Proceedings

Section 1225(b) treats the three categories mentioned above differently: "Applicants for admission" encountered at the border or a port of entry or who entered and lived without admission for less than two years must be removed "without further hearing or review" unless the applicant says that he is seeking asylum or fleeing persecution. 8 U.S.C. § 1225(b)(1)(A)(i). But un-admitted aliens who have lived within the United States for more than 2 years "shall be detained for a proceeding" under § 1229a. 8 U.S.C. § 1225(b)(2)(A). Despite this distinction—*i.e.*, summary removal versus § 1229a proceedings—Congress was consistent when it came to bond hearings pending removal: "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018).

That's not the case with 8 U.S.C. § 1226(a), the arrest and removal provision that AEDPA moved from its former home, 8 U.S.C. § 1252, where it governed deportation proceedings for aliens who had entered the country before 1996. *See* 8 U.S.C. § 1251 (1994) (now 8 U.S.C. § 1227). Section 1226 broadly covers any "alien" who is arrested and detained "on a warrant issued by the Attorney General." Section 1226 does not differentiate between "applicants for admission" (§ 1225 aliens) and an alien "in and admitted to the United States" (§ 1227 aliens). So arguably, it *could* cover both admitted and un-admitted aliens if all provisions are met. And § 1226(a)(2) gives the Attorney General discretion to release a detained alien on bond.

—

The question that has split courts is whether § 1225(b)(2) or § 1226(a)(2) governs whether an alien who entered and lived in the United States without admission is entitled to a bond hearing pending his removal proceeding. Mejia asks this court to declare that § 1225(b)(2) does not apply to him, making bond available under § 1226(a)(2).

## DISCUSSION

As mentioned, because time is short, the court advanced its hearing and decision on Mejia's habeas petition under Rule 65(a)(2). Because this discussion ultimately decides the merits of Mejia's habeas petition, it moots Mejia's request for an injunction pending the court's decision on habeas.

While the court has focused heavily on the statutory issue so far, Mejia pleads three counts, each of which presents a different reason why the court must order Harper to present Mejia before an immigration judge for a bond hearing before his § 1229a removal proceeding. The court addresses the counts in the order Mejia pleaded them. But first, the court must find that it has jurisdiction to consider Mejia's petition.

### A. Jurisdiction

The court must answer two jurisdictional questions: (1) Did Congress remove district courts' ability to consider § 2241 habeas petitions filed by persons awaiting a §1229a removal hearing, and if not, (2) did Mejia file his petition in the right district against the right respondent?

#### 1. The Zipper Clause (8 U.S.C. § 1252(b)(9))

Mejia is facing a hearing and possible final order of removal under 8 U.S.C. § 1229a. Section 1252(b) governs the review of the removal orders. Its final provision, often called "the zipper clause," says:

> With respect to review of an order under subsection (a)(1), the following requirements apply:
>
> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, by section 1361 or 1651 of such

> title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9). Read plainly, the zipper clause precludes this court from hearing Mejia's § 2241 habeas petition because the petition raises constitutional and statutory questions of law (*i.e.*, entitlement to a bond hearing) that arise from an action (*i.e.*, Mejia's detention and notice of action of §1229a removal hearing) brought to remove Mejia from the United States. *See Jennings*, 583 U.S. at 314–26 (Thomas, J., concurring in part) (§ 1252(b)(9) deprives courts of jurisdiction over an alien's challenge to the fact of his detention). Rather than file a pre-hearing habeas petition, § 1252(b)(9)'s text seems to require Mejia to wait until a final order of removal is entered, then add the denial of his request for a bond hearing as an issue for review. *Id.* at 317.

The court says "seems to" because the Eleventh Circuit has held that the zipper clause, including its prohibition on § 2241 habeas petitions, becomes effective only ***after*** an immigration judge enters an order of removal. *See Madu v. U.S. Att'y Gen.*, 470 F.3d 1362, 1367 (11th Cir. 2006). And the Supreme Court, in fractured opinions, has found that the zipper clause and other provisions of the INA do not strip federal courts of jurisdiction to decide whether detainees awaiting a removal hearing are entitled to release hearings. *Compare Demore v. Kim*, 538 U.S. 510, 516–17 (2003) (Six justices finding that 8 U.S.C. § 1226(e) doesn't bar a habeas petition challenging constitutionality of legislation authorizing detention without bail) *with id.* at 533–40 (O'Connor, J., concurring) (Three justices finding that "§ 1226(e) plainly deprives courts of federal habeas jurisdiction over claims that mandatory detention under § 1226(c) is unconstitutional"); *compare Jennings*, 583 U.S. at 292–95 (Three justices finding that 8 U.S.C. §§ 1252(b)(9) and 1226(e) did not deprive courts of jurisdiction to decide the extent of the Government's detention authority) *with id.* at 314–26 (Thomas, J., concurring in part) (Two justices finding that § 1252(b)(9) deprived courts of jurisdiction over an alien's challenge to the fact of his detention) *and id.* at 355 (Breyer, J., dissenting) (Three justices dissenting but finding that "[j]urisdiction . . . is unaffected by 8 U.S.C. § 1252(b)(9)"); *compare Nielsen v. Preap*, 586 U.S. 392, 401–02 (2019) (Three justices finding that 8 U.S.C. §§ 1252(b)(9) and 1226(e) did not block challenge to Government's characterization of plaintiffs as aliens subject to mandatory

detention under 8 U.S.C. § 1226(c)) *with id.* at 422–27 (Thomas, J., concurring in part) (Two justices finding that courts lack jurisdiction to decide questions related to the detention of aliens before entry of a final order of removal); *compare Johnson v. Guzman Chavez*, 594 U.S. 523, 533 n.4 (2021) (Four justices finding that Court had jurisdiction to decide whether 8 U.S.C. § 1226 or 8 U.S.C. § 1231 applied to aliens who were removed from the United States but later reentered without authorization); *with id.* at 547–48 (Thomas J., concurring except for footnote 4) (Two justices stating that courts cannot hear challenges to detention during the removal process) *and id.* at 550 (Bryer, J., dissenting) (Three justices dissenting but agreeing that courts have jurisdiction to decide whether the Government has the authority to deny bond hearings); *compare Johnson v. Arteaga-Martinez*, 596 U.S. 573, 575–84 (2022) (Six justices addressing merits of whether 8 U.S.C. § 1231(a)(6) requires the Government to offer bond hearings after six months of detention without questioning jurisdiction) *with id.* at 584–85 (Thomas, J., concurring) (Two justices finding that jurisdiction was lacking under 8 U.S.C. § 1252(b)(9)).

Based on these cases, the court moves forward, but not before deciding whether the case was filed in the right district, against the right respondent.

### 2. *Location and Proper Respondent*

a) *Location*: The habeas statute allows district courts to grant relief only "within their respective jurisdiction." 28 U.S.C. § 2241(a). The Supreme Court has held that the proper jurisdiction is determined by the petitioner's location at the time he filed his petition, and that district court does not lose jurisdiction if the Government moves the petitioner to another district. *Rumsfeld v. Padilla*, 542 U.S. 426, 440-41 (2004) *discussing Ex parte Endo*, 323 U.S. 283, 304-05 (1944).

Here, Mejia was checked out of the Gadsden facility for transport to Winnfield, Louisiana 18 minutes before his attorneys filed his habeas petition. The parties agree that Mejia was driven to an airfield to be flown to Louisiana. The court finds that it is impossible to be checked out of the Etowah County Detention Center in downtown Gadsden, driven to the nearest airfield, and flown outside the district, in 18 minutes or less. The court therefore finds that Mejia was within the Northern District of Alabama when his attorneys filed

his habeas petition, giving this court jurisdiction to decide its merits even though Mejia is no longer within the district. *Id*.

b) *Custodian*: The habeas statute says that the proper respondent is "the person who has custody over" the petitioner. 28 U.S.C. § 2242. The Supreme Court reads this language as referring to the "immediate custodian"; that is, the person who has immediate physical custody of the petitioner and can produce him if the court issues a writ.

As explained, Mejia was checked out of the Etowah County Detention Facility in Gadsden 18 minutes before he filed his petition. That means Barry Smith, the Chief of Detention at the Gadsden facility, did not have custody of Meija then or now, so Smith cannot produce Mejia if the court issues the writ. Furthermore, the Supreme Court has held that the Attorney General and other "remote supervisory official[s]" are not proper respondents because they do not have immediate custody of the petitioner. *Rumsfeld*, 542 U.S. at 435-36. So Attorney General Pamela Bondi, DHS Secretary Kristi Noem, and Acting ICE director Todd Lyons also cannot serve as the proper respondent.

Only "the warden of the facility where the prisoner is being held" can be considered the immediate custodian and thus the respondent. *Id*. at 435. Because Meija is presently being held at ICE's Louisiana facility, the court finds that Melissa Harper, the Field Office Director of the New Orleans ICE Field Office, is the proper respondent. So the court **DISMISSES** the other respondents: Todd Lyons, Kristi Noem, Pamela Bondi, and Barry Smith.

### B. Merits

The court moves now to the merits of Mejia's claims, in the order that he pleaded them.

### Count 1: Preclusive effect of California class action

Mejia bases Count 1 on rulings issued by a sister court. In *Maldonado Bautista*, the Central District of California found that 8 U.S.C. § 1225(b)(2) does not apply to aliens apprehended years after they unlawfully entered the United States. *See Bautista v. Santacruz*, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025). The court then certified a class of "[a]ll noncitizens in the United States without lawful status who (1) have entered the United States without

inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination." *Bautista v. Santacruz*, 2025 WL 3288403, at *1 (C.D. Cal. Nov. 25, 2025). In later orders, the court purportedly vacated DHS's policy to apply § 1225(b)(2) to all applicants for admission and the Board of Immigration Appeals' ("BIA") decision in *Matter of Yajure Hurtado* that aliens who enter the country without admission are not entitled to bond hearings.

In Count 1, Mejia asserts that he is a member of the *Maldonado Bautista* bond eligible class and thus the Government cannot deny him a bond hearing under 8 U.S.C. § 1225(b)(2). In its discussion of Count 2, this court explains why it believes the California court erred in reading the statute and its history. But even if the California district court's orders were correctly reasoned, this court strongly doubts that the California court's orders have any preclusive effect here. As several of my colleagues have noted, it is highly unlikely that the Central District of California had the authority to set aside the DHS policy and *Yajure Hurtado* or certify the bond eligible class. *See Calderon Lopez v. Lyons*, 2025 WL 3683918 (N.D. Tex. Dec. 19, 2025); *Ore Falcon v. Wofford*, 2026 WL 171927 (E.D. Cal. Jan. 22, 2026). Nor does one district court's judgment typically bind other district courts or allow a party to use offensive collateral estoppel against the Government. *See Morales v. Noem*, 2026 WL 23607, at *8 (S.D. Fla. Jan. 29, 2026).

And regardless of the obligations *Maldonado Bautista* imposes on the Government, the court finds that it doesn't bind ***this court*** in Mejia's habeas action. Under 28 U.S.C. § 2241(c)(3), the court may grant a writ of habeas corpus only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2241(c)(3). So this court's resolution of Mejia's habeas petition doesn't turn on Mejia's potential membership in the *Maldonado Bautista* class or the validity of the DHS policy or *Yajure Hurtado*. It turns on whether Mejia's detention without a bond hearing violates either the plain text of the INA (*i.e.,* Count 2) or the Due Process Clause of the Fifth Amendment (*i.e.*, Count 3). As a result, the court will **DENY** Count 1's request for habeas relief based on *Maldonado Bautista*.

### Count 2: Violation of the INA (8 U.S.C. §§ 1225, 1226)

In Count 2, Mejia alleges that his detention without a bond hearing violates the INA. Mejia argues that he is not an "applicant for admission" under § 1225(b)(2)(A), so that section cannot deny him a bond hearing. While it seems a majority of district courts have agreed with Mejia in similar circumstances, the Fifth Circuit rejected this argument earlier this month. *See Buenrostro-Mendez v. Bondi*, 2026 WL 323330 (5th Cir. Feb. 6, 2026). In Part B, I explain why this court reads the statute like the Fifth Circuit and other district courts. *See, e.g.*, *Jandres-Ordonez v. Bondi*, 2026 WL 274493 (N.D. Tex. Jan. 23, 2026). But first, the court explains why the particular facts of this case obviate the need for a deep dive into statutory interpretation.

### A. Mejia admits facts that place him within Section 1225(b)(2) and outside § 1226(a).

As explained, section 1225(a) governs "applicants for admission," which the statute defines as an alien "who has not been admitted or who arrives in the United States." Mejia admits he "has not been admitted" into the United States. So we move down to Section 1225(b)(2)(A). That section provides that an immigration officer "shall" detain "an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A) (highlight added). The court highlights the phrase "alien seeking admission" because a common argument is that aliens who avoided immigration officials and lived in the United States without seeking admission were not "seeking admission" when they were detained, and they are not "seeking admission" pending their § 1229a hearing. In short: The detainee never sought admission; he sought to live undetected.

The Fifth Circuit rejected this argument on statutory interpretation grounds in *Buenrostro-Mendez*. And this court will follow suit in Part B. But that exercise is likely unnecessary because Mejia's attorneys admitted at the hearing that Mejia *is* seeking admission at his § 1229a hearing this Friday: Mejia will ask for his status to be changed to permanent legal resident under 8 U.S.C. § 1229b(b)(1), which applies to eligible aliens who have been in the United States for at least 10 years. Mejia's 'seeking of admission' is the basis

for his constitutional argument in Count 3—*i.e.*, it would violate Mejia's Fifth Amendment due process right to prevent him from arguing for release on bond to help his attorneys prepare for his § 1229b(b)(1) case for admission. So however one reads § 1225(b)(2) generally, under the facts of *this* case, Mejia admits that he is an alien seeking admission, which places him squarely within 8 U.S.C. § 1225(b)(2)(A).

Mejia also admits that ICE detained him on a civil arrest warrant, not a criminal warrant sought and executed by the Attorney General. So by its plain terms, 8 U.S.C. § 1226(a) does not apply. Based on these admissions, the court finds that the undisputed facts place Mejia solely within 8 U.S.C. § 1225(b)(2)(A); 8 U.S.C. § 1226(a) does not apply. Because Mejia is being given the process afforded by 8 U.S.C. § 1225(b)(2)(A) and 8 U.S.C. § 1229a, the court cannot find that Harper is detaining Mejia in violation of a federal statute as required for § 2441 habeas relief under Count 2.

### B. The Fifth Circuit correctly reads §§ 1225 and 1226.

Let's assume the court is wrong that counsel's assertion that Mejia will seek admission under 8 U.S.C. § 1229b(b)(1) later this week means that Mejia is "seeking admission" under 8 U.S.C. § 1225(b)(2)(A). The court still finds that the plain language and statutory history of § 1225(b)(2)(A) makes Mejia an "applicant for admission" subject to § 1229a removal proceedings.

In my opinion, the Fifth Circuit (*Buenrostro-Mendez, supra*) and Northern District of Texas (*Jandres-Ordonez, supra*) correctly laid out why § 1225(b) rather than § 1226(a) applies to aliens who entered the United States without admission and were later detained by ICE. Rather than duplicate their work, I summarize my main points of agreement with their reading of the text:

1. Section 1225 specifically applies to aliens who are not admitted, while Section 1226 when read most favorably to Mejia generally applies to all arrested aliens, regardless of admission. So if both provisions apply, and there is a conflict between them, Section 1225 prevails. *See* Antonin Scalia & Bryan A. Garner*, Reading Law: The Interpretation of Legal Texts* § 28, at 183 (2012) (General/Specific Canon).

13

2. Section 1225(a) defines "applicant for admission" with the disjunctive "or," meaning that both (a) aliens "who arrive in the United States" ***and*** (b) aliens "who [have] not been admitted" are considered applicants. *See Reading Law* § 12 (Conjunctive/ Disjunctive Canon). To remove aliens who live within the United States without admission from the group of aliens deemed "applicants for admission" under § 1225(a) would read the phrase "who has not been admitted" out of the statute. *But see Reading Law* § 26 (Surplusage Canon).

3. Congress considered the longevity of an un-admitted alien's stay when writing § 1225 in IIRIRA, as shown by Congress's choice to summarily remove aliens who avoided inspection for less than two years (§ 1225(b)(1)(A)(iii)) while giving those who avoided inspection for more than two years a § 1229a hearing (§ 1225(b)(2)(A)). Courts must assume that Congress knowingly chose to give long-term applicants for admission the rights afforded by § 1229a but not the right to a bond hearing given to aliens arrested and detained under § 1226(a). *See Reading Law* § 8 (Omitted-Case Canon).

4. An average reader would understand that Congress used the phrase "seeking admission" in § 1225(b)(2)(A) as the verbal shorthand for an "applicant for admission," just as an applicant to a college 'seeks admission' to that college. *See Reading Law* § 6 (Ordinary-Meaning Canon). Plus, Congress's use of the phrase "[a]ll aliens … who are applicants for admission or otherwise seeking admission" earlier in § 1225(a) confirms that Congress considers "applicants for admission" as a subset of persons "seeking admission."

Aside from its text, section 1225's statutory history confirms that Congress intended to treat aliens who entered the country by avoiding immigration officials (*see* §§ 1225(b)(1)(iii) and 1225(b)(2)) like aliens encountered at the border (*see* § 1225(b)(1)(i)). As explained in the Statutory Background, to close the "entry loophole," Congress first passed a provision in AEDPA that excluded aliens who entered without

14

admission from the provision governing the deportation of aliens who entered with admission:

> SEC. 414. EXCLUSION OF ALIENS WHO HAVE NOT BEEN INSPECTED AND ADMITTED.
>
> (a) IN GENERAL.—Section 241 of the Immigration and Nationality Act (8 U.S.C. 1251) is amended by adding at the end the following new subsection:
>
> "(d) Notwithstanding any other provision of this title, an alien found in the United States who has not been admitted to the United States after inspection in accordance with section 235 is deemed for purposes of this Act to be seeking entry and admission to the United States and shall be subject to examination and exclusion by the Attorney General under chapter 4. In the case of such an alien the Attorney General shall provide by regulation an opportunity for the alien to establish that the alien was so admitted.".

Pub. L. 104-132 § 414(a). While this provision never took effect because Congress passed IIRIRA later the same year, it shows that the same Congress who added the phrase "seeking admission" into § 1225(b)(2)(A) deemed "an alien found in the United States who has not been admitted to the United States after inspection . . . ==to be seeking entry and admission== to the United States[.]" *Id.* (highlight added).

When Congress enacted IIRIRA, it removed the provision governing the removal of aliens who entered without admission from the provision governing aliens who entered with admission (former § 1251, now § 1227), and placed it instead within the provision that governs the removal of persons encountered at the border (current § 1225). To read § 1225(b)(2)(A) to treat aliens who circumvented the admission process like aliens who were legally admitted—rather than like aliens being encountered at the border—would reopen the "entry loophole" that Congress closed with AEDPA and the IIRIRA.

—

To sum up, § 1225(b)(2)(A) does not provide a bond hearing for a detained alien awaiting his § 1229a removal hearing. *See Jennings, supra.* Meija admits that he seeks admission for the first time under 8 U.S.C. § 1229b(b)(1), so Mejia implicitly acknowledges that § 1225(b)(2)(A) governs his detention and removal. But even if he didn't,

15

Mejia fits within the plain text and statutory history of § 1225(b)(2)(A). Either way, Harper is not violating the INA by detaining Mejia without a bond hearing pending Mejia's § 1229a removal hearing. As a result, Mejia is not entitled to § 2241 habeas relief under Count 2.

### Count 3: Violation of Fifth Amendment Due Process

In Count 3, Mejia alleges that Respondent's refusal to give him a bond hearing violates his Fifth Amendment right to due process. At the hearing before this court, Mejia's attorneys argued that Mejia obtained a liberty interest during the 27 years he lived in the United States un-admitted and that Mejia must be released on bond to help his attorneys protect that interest by preparing his case for a status change under 8 U.S.C. § 1229b(b)(1). The court rejects this argument for two reasons.

1. *Process for the un-admitted*: The Supreme Court has long held that an alien who enters the United States without admission "has only those rights regarding admission that Congress has provided by statute." *Thuraissigiam*, 591 U.S. at 138-40 (quoting cases since 1892). Thuraissigiam, for example, successfully crossed 25 yards into the country before being detained. *Id.* at 139. Thuraissigiam argued, and the Ninth Circuit agreed, that his entry into the United States vested Thuraissigiam with more constitutional rights than an alien encountered at the border, including judicial review of his credible-fear proceeding—a review that Congress withheld from § 1225(a) applicants for admission. *Id.* The Supreme Court disagreed:

> We reject it. It disregards the reason for our century-old rule regarding the due process rights of an alien seeking initial entry. That rule rests on fundamental propositions: '[T]he power to admit or exclude aliens is a sovereign prerogative'; the Constitution gives 'the political department of the government' plenary authority to decide which aliens to admit, and a concomitant of that power is the power to set the procedures to be followed in determining whether an alien should be admitted.
>
> This rule would be meaningless if it became inoperative as soon as an arriving alien set foot on U.S. soil. When an alien arrives at a port of entry—for example, an international airport—the alien is

16

> on U.S. soil, but the alien is not considered to have entered the country for the purposes of this rule. On the contrary, aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'
>
> The same must be true of an alien like respondent. As previously noted, an alien who tries to enter the country illegally is treated as an 'applicant for admission,' § 1225(a)(1), and an alien who is detained shortly after unlawful entry cannot be said to have 'effected an entry'. Like an alien detained after arriving at a port of entry, an alien like respondent is 'on the threshold.' The rule advocated by respondent and adopted by the Ninth Circuit would undermine the 'sovereign prerogative' of governing admission to this country and create a perverse incentive to enter at an unlawful rather than a lawful location.
>
> For these reasons, an alien in respondent's position has only those rights regarding admission that Congress has provided by statute.

*Id.* at 139-40 (citations omitted). The rule is simple: Whether an alien makes it 25 yards or 27 years into the United States, if he was not legally *admitted* into the country, his due process rights extend only as far as Congress dictates by statute. As explained in Count 2, Congress did not extend the right to a bond hearing to applicants for admission under § 1225. Because Congress did not give Mejia this right, neither does the Fifth Amendment. *Id.*

2. *Process for the admitted*: Even if Mejia is right that his 27 years in the United States, including the family he created during that time, created a liberty interest that spawns due process rights equal to someone who was legally admitted into the United States, the result is the same.

In *Demore v. Kim*, 538 U.S. 510 (2003), an admitted alien (Kim) who was arrested and awaiting deportation under § 1226(c) argued that Congress's preclusion of a bond hearing violated his Fifth Amendment due process rights. Four Circuit Courts agreed with Kim and other admitted aliens like him. *Id.* at 526-27. But the Supreme Court reversed, noting that "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation

17

proceedings. At the same time, however, this Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Id.* at 523. The Court held that the Government could constitutionally detain Kim without a bond hearing, despite Kim's previous admission into the country, because (1) detention without bond served the purpose of preventing Kim from fleeing before or during his removal proceeding, and (2) § 1226(c) removal proceedings had a definite termination point that averaged 47 days. *Id.* at 527-31.

The same facts are present here. First, the preclusion of bond hearings ensures that aliens detained under § 1225(b)(2) do not flee pending their § 1229a removal hearings. Second, Mejia's detention has a definite limitation: His hearing is scheduled for 23 days after his detention by ICE. Because our facts largely mirror Kim's, *Demore* dictates that Mejia has no due process right to a bond hearing—even if courts afforded him the same rights as an admitted alien. *Contra Thuraissigiam*, *supra* (applicants for admission do not obtain constitutional rights beyond those given by Congressional act).

—

In short, Mejia is due no process beyond the process Congress gave him. Congress chose to withhold bond hearings from applicants for admission, so the Fifth Amendment does too. Because Harper is not holding Mejia in violation of the Fifth Amendment, Mejia is not entitled to § 2241 habeas relief under Count 3.

## CONCLUSION

For these reasons, the court **DISMISSES** Todd Lyons, Kristi Noem, Pamela Bondi, and Barry Smith as Respondents; **DENIES** Mejia's habeas petition (doc. 1) on the merits; and **DENIES AS MOOT** Mejia's corresponding motion for a preliminary injunction (doc 2).

**Done** and **Ordered** on February 23, 2026.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE